UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 1:16 CV 1581 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| $31,000 in U.S. Currency & | ) | |
| $10,000 in U.S. Currency, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff United States of America's Motion to Strike Claim of Claimants Taiwan Wiggins and Dalante Allison (Doc. 13). This is a civil forfeiture action against U.S. currency that was seized by agents of the Drug Enforcement Administration at Cleveland Hopkins International Airport on February 24, 2016. For the following reasons, the government's motion is GRANTED.

**BACKGROUND**

The government alleges the following facts in its complaint in forfeiture (Doc. 1):

1

6. On February 23, 2016, a member of the DEA Cleveland Transportation Interdiction Group received information regarding separate travel itineraries for Wiggins and Allison. They were both scheduled to depart Cleveland, Ohio, at 5:42 a.m. on February 24, 2016, on a flight to Orange County, California.

7. DEA learned that both Wiggins and Allison had previous felony drug arrests and convictions. DEA was aware that Wiggins was a significant drug dealer in the Cleveland area.

8. At approximately 4:50 a.m. on February 24, 2016, agents saw Wiggins and Allison in the lobby at the Cleveland Hopkins International Airport. Wiggins had one carry-on bag and one larger bag and Allison had one roller carry-on bag.

9. After obtaining their tickets, Wiggins and Allison walked together towards the Transportation Security Administration (hereinafter "TSA") security checkpoint while engaged in a conversation.

10. An agent observed the TSA x-ray monitor as Allison's carry-on bag passed through it. Based upon his training and experience, the agent observed that Allison's bag contained an item having organic mass consistent with bulk currency.

11. As Wiggins passed through the TSA security checkpoint, a DEA agent approached him, introduced himself as well as another member of his unit, and presented his credentials. Wiggins agreed to talk to the agents as Wiggins was continuing through the concourse towards his gate.

12. During the conversation, Wiggins claimed to own a company named "Wiggins Cleaning" but could not name any businesses that his company provided cleaning and construction services to, other than "Mike & Mike."

13. Wiggins stated he did not know how much money he makes a year, but was adamant that he makes a lot of money.

14. The DEA agent asked Wiggins if he was traveling with any bulk currency and Wiggins responded that he had $2,000 in a shoe contained in his bag.

15. Wiggins verbally consented to a search of his luggage. Agents found defendant $31,000.00 in U.S. Currency hidden behind the lining of the suitcase.

16. Wiggins claimed that the currency in his suitcase was earnings from his company, Wiggins Cleaning.

17. The DEA agent asked Wiggins his reason for traveling with such a large amount of currency.

18. Wiggins appeared startled by the discovery of the defendant currency and looked at the agents without responding to the question.

19. Wiggins claimed to be traveling alone, stated he was planning to get a hotel room after he arrived in California, and denied knowing Allison.

20. While agents were talking with Wiggins, Allison walked past and glared at the agents.

21. Approximately l0 minutes before his flight was due to depart, Allison entered a long line at the nearby Starbucks with at least fifteen people in front of him.

22. When the gate agent for the departing flight paged his name, Allison quickly jumped out of line. walked at a fast pace directly to the gate, hurriedly presented his ticket to the gate agent, and rushed down the jet way.

23. An agent for Homeland Security Investigations (HSI) asked the gate agent if she would ask Allison to come up from the jet way to speak with the agents.

24. When Allison arrived back to the departure gate area, the HSI agent displayed his credentials and asked if he could ask Allison a few questions. Allison verbally agreed to talk to the agents.

25. Allison acknowledged that he was traveling with currency.

26. Allison agreed to wait approximately five minutes to answer questions from the DEA agent, who was finishing a separate encounter with another passenger.

27. When the DEA agent approached Allison. Allison agreed to talk with him and verbally consented to a search of his carry-on luggage.

28. During that search, defendant $10,000 in U.S. Currency was found in a bundle inside a sock.

29. Allison claimed he obtained the money through gambling at a casino; however, he could provide neither the name of the casino nor the date on which the currency was obtained.

30. Allison stated he was employed at "Jay's Cleaning Service" and provided an address in Cleveland, Ohio for that business. Allison stated he earns $35,000 yearly and files taxes.

31. Allison claimed he was traveling alone, stated he was planning to get a hotel room after arrival in California, and denied knowing Wiggins.

32. A certified canine officer and his canine, "Kilo," conducted a blind test at the airport, during which the canine made positive alerts for the odor of narcotics on the separate boxes containing each of the defendant currencies.

33. The DEA seized the defendant currencies.

34. Wiggins has a drug-related criminal history which includes multiple arrests and the following conviction: Conspiracy to Possess with Intent to Distribute Cocaine Base, in the United States District Court for the Northern District of Ohio, on August 10, 2007, in Case No. l:06CR594.

35. Allison has a drug-related criminal history which includes multiple arrests and the following convictions in the Cuyahoga County Court of Common Pleas: Trafficking in Drugs (two counts), on January 5, 2005, Case No. CR-4456385; Trafficking in Drugs, on May 31, 2006, Case No. CR-6477340; and Drug Possession, on September 29, 2014, Case No. CR-14583668.

36. DEA was unable to locate Jay's Cleaning at the address provided by Allison. Additionally DEA was unable to locate any business filings with the Ohio Secretary of State for Jay's Cleaning, Wiggins Cleaning, and Mike & Mike.

37. Wiggins and Allison have not filed state income tax returns for the tax years 2011 through 2015.

The government filed its complaint in forfeiture on June 23, 2016, naming the $31,000 and $10,000 seized by the DEA agents as defendant currencies. The government alleges that the seized currencies are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because "they constitute proceeds traceable to drug trafficking activities and/or w[ere] used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. §§ 841(a) and/or 846." (Compl. at ¶ 5). Allison and Wiggins, represented by counsel, filed verified claims to the defendant currencies on July 6, 2016. In their respective claims, both men state that they are the "sole and absolute owner [and were] in exclusive possession of these monies." (Doc. 6 at 2); (Doc. 7 at 2).

The government now moves to strike their claims for lack of statutory standing under

4

Supplemental Admiralty and Maritime Claim Rule G(5)(a)(i)(B). Allison and Wiggins oppose the government's motion, arguing that the seizure of the currency was illegal and that they have standing because they have made a claim of ownership and the currency was in their possession when it was seized.

**LAW AND ANALYSIS**

The Supplemental Admiralty and Maritime Claims Rules govern judicial forfeiture proceedings. *United States v. Currency $267,961.07*, 916 F.2d 1104, 1107 (6th Cir. 1990). Pursuant to Rule G(5) of the Supplemental Rules, persons claiming an interest in property that is subject to a forfeiture action *in rem* may file a claim contesting the forfeiture. The claim must identify the specific property claimed, identify the claimant and state the claimant's interest in the property, be signed by the claimant under penalty of perjury, and be served on the government. Supp. Admiralty and Maritime Claim R. G(5)(a)(i)(A)-(D).

To contest a governmental forfeiture action, a claimant must have both statutory standing and Article III standing. *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). Statutory standing is established by satisfying the requirements of Rule G(5) for filing a claim. *See id.*; *see also U.S. v. $25,982.28 in U.S. Currency*, 2015 WL 410590, at *2 (N.D. Ohio Jan. 29, 2015). To establish Article III standing, the claimant must have a colorable ownership, possessory, or security interest in at least a portion of the property. *$515,060.42 in U.S. Currency*, 152 F.3d at 497.

Because of the danger of false claims, a claimant cannot satisfy Rule 5(G)(a)(i) with a conclusory statement of ownership. *$25,982.28 in U.S. Currency*, 2015 WL 410590, at *1 (citing *United States v. Thirty-one Thousand Dollars in U.S. Currency*, 2012 WL 5343350, at *4 (E.D.

5

Mich. Oct. 29, 2012) (bald assertion of ownership does not meet the requirements of Rule G(5); *United States v. Nine Thousand Five Hundred Dollars in U.S. Currency,* 2014 WL 7005129, at *2 (N.D. Ohio Dec. 10, 2014) (general statement that claimant is the rightful owner of currency is insufficient to satisfy Rule G(5)) (other citations omitted). Similarly, because of concerns about "straw man" transfers, a claimant cannot demonstrate Article III standing with a claim of "naked possession." *$515,060.42 in U.S. Currency*, 152 F.3d at 498. "When confronted with mere physical possession of property as a basis for standing, [the Sixth Circuit] require[s] some explanation or contextual information regarding the claimant's relationship to the seized property." *Id.* When a claimant uses simple physical possession as a basis for standing, he or she must also allege facts "regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *Id.*

At any time before trial, the government may move to strike a claim for failure to comply with Rule G(5) or because the claimant lacks standing. Supp. Admiralty and Maritime Claim RG(8)(c)(i)(A), (B). Here, the government moves to strike Wiggins's and Allison's claims to the defendant currency, arguing that their bald assertions of ownership–that they are the "sole and absolute owner [and were] in exclusive possession" of the defendant currencies–is insufficient to establish statutory standing. In opposition, Wiggins and Allison argue that the DEA agents unlawfully seized the currencies and that a claim of ownership plus actual possession is sufficient to establish a "colorable interest" in the money. (Doc. 14 at 1-3) (citing *U.S. v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 818 (7th Cir. 2013)).

Whether the Court considers the government's motion under Rule G(5) or Article III

standing, it is clear that Wiggins and Allison lack standing because their claims are nothing more than a naked assertion of ownership. They have done nothing to meet the Sixth Circuit's requirement that they provide an explanation or contextual information regarding their relationship to the seized currencies. Specifically, they have failed to allege facts showing how they came to possess the currencies, the nature of their relationship to the currencies, or the story behind their control of the currencies.[1] Moreover, though the government's motion put the men on notice that their claims were deficient, they do not seek to supplement them.

Accordingly, the government's Motion to Strike Claim of Claimants Taiwan Wiggins and Dalante Allison (Doc. 13) is hereby GRANTED.[2] Because Wiggins and Allison lack standing, the Court need not reach their argument that the defendant currencies were unlawfully seized.

---

[1] The claimants' answers do not shed any light on their claim to ownership. Indeed, in their answers, both men deny the story that they gave the DEA agents at the airport about their claim to ownership. The government alleges that Wiggins claimed the currency was earnings from his company, Wiggins Cleaning. In his Answer, Wiggins denies this allegation. (Doc. 8 at ¶ 16). Similarly, Allison denies the government's allegation that he claimed the money was proceeds from gambling. (Doc. 9 at ¶ 29).

[2] The government may test a claimant's basis for standing by issuing special interrogatories directed at "the claimant's identity and relationship to the defendant property" pursuant to Supplemental Rule G(6)(a). The Court agrees with the government that it should not be put to the burden of propounding special interrogatories in this situation because the claimants' assertions of ownership are too vague to facilitate the drafting of focused interrogatories. *See U.S. v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 565-66 (D. Md. 2013) (granting motion to strike before government filed special interrogatories because "[t]here [was] no way, given such vague notions of [the claimant's] connection to the seized currency, that the government could propound focused interrogatories that test the truthfulness of her claim").

IT IS SO ORDERED.


                                        /s/ Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
Dated: 9/30/16                 United States District Judge