**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 1:16 CV 1581 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| **$31,000 in U.S. Currency**, *et al* | ) | |
| | ) | **Memorandum of Opinion and Order** |
| Defendants. | ) | |

### INTRODUCTION

This case arises in the context of a civil forfeiture action. Pending before the Court is Plaintiff's Motion for Summary Judgment on the Issue of Standing (Doc. 33). For the reasons that follow, the motion is GRANTED.

### FACTS

On February 24, 2016, Taiwan Wiggins and Dalante Allison (together, "claimants") were at the Cleveland Hopkins International Airport for a flight to Orange County, California. According to the government's verified complaint, the Drug Enforcement Administration (DEA)

1

was aware of their itineraries, that each had previous felony drug convictions, and that Wiggins was a significant drug dealer in Cleveland. The DEA observed them at the airport engaging in conversation as they walked together toward the security checkpoint.

The government alleges that, after passing through security, Wiggins spoke voluntarily with a DEA agent who asked him if he was traveling with any bulk currency. Wiggins responded that he had $2,000 in a shoe in his bag. According to the government, Wiggins consented to a search of his luggage, during which the DEA agents found $31,000 hidden behind the lining of his suitcase. Wiggins claimed that the money was earnings from his company Wiggins Cleaning. He could not name any businesses that his company provided services to other than "Mike & Mike."

The government alleges that while the DEA questioned Wiggins, Allison walked by and then joined a long line at Starbucks shortly before his scheduled flight time. When the gate agent paged him, he quickly jumped out of line and rushed down the jetway. A Homeland Security Investigations agent told the gate agent to ask Allison to come back up the jet way. Allison allegedly agreed to speak to a DEA agent and consented to a search of his carry-on luggage. The agent found $10,000 in currency in a sock. Allison stated that he had won the money at a casino but could not provide the name of the casino or the date when he had won the money. He also stated that his employer was "Jay's Cleaning Service," that he earned $35,000 annually, and that he filed taxes annually.

A canine officer and his canine then conducted a blind test at the airport. The canine alerted to the odor of narcotics on "the separate boxes containing each of the defendant currencies." The government thereafter seized the funds. It then filed an in rem forfeiture

2

complaint in this Court. In its complaint, the government states that the DEA could not locate business filings for Jay's Cleaning, Wiggins Cleaning, or Mike and Mike, and that neither claimant filed state income tax returns for 2011–2015. The government alleges that the defendant currencies were forfeitable pursuant to 21 U.S.C. § 881(a)(6), as proceeds traceable to drug trafficking activities or that were used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. §§ 841(a), 846.

In response to the government's complaint, Wiggins and Allison filed verified claims. Both claimants assert that the DEA conducted "a warrantless arrest and a warrantless search and seizure [in] the absence of probable cause." Each state that "this Claim is further based on the indisputable fact that as the person who is the sole and absolute owner, and who was in exclusive possession of the monies, I was victimized by an illegal arrest and I was victimized by the illegal seizure of the funds here involved." The claimants also filed answers denying the relevant allegations by the government, including that the money was theirs, that the searches were consensual, that they failed to pay taxes, and that the funds were forfeitable.

The government moved to strike both claims because they raised only bald assertions of ownership. It argued that such assertions were insufficient to meet the statutory requirements of Rule G of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Civil Forfeiture Actions (the "Supplemental Rules"). This Court granted the motion to strike, and the claimants appealed. In deciding the matter as an issue of first impression in the Sixth Circuit, the court reversed, holding that, "[a]t the pleading stage, a verified claim of ownership is sufficient to satisfy Article III [standing requirements] and the procedural

3

requirements of Rule G." *United States v. $31,000 in U.S. Currency*, 872 F.3d 342, 351 (6th Cir. 2017).

On remand, this Court set a non-expert discovery deadline of March 15, 2018, and a dispositive motion deadline of April 15, 2018. The government served special interrogatories pursuant to Supplement Rule G(6)(a) on the claimants on December 8, 2017. Under this rule, "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." The interrogatories sought information about the source of the money that the claimants were carrying in their luggage, legitimate income sources, the purpose and nature of the claimant's travel, and the relationships between the claimants and with another individual involved in a separate seizure that occurred the same day and involved the same scheduled flight. Claimants filed affidavits on February 21, 2018, stating that they were exercising their Fifth Amendment right to not respond to the special interrogatories. Counsel for claimants also filed an opposition brief, stating that the claimants "are not required to put on, or even expose, their defenses prematurely. This is so because until the Government survives [t]heir 'Motion to Suppress' and actually proves the items centralized in the litigation are forfeitable—indeed to the Government. [*sic*]….This follows because no Claimant is required to put on any defense to a forfeiture case until the government first proves the items sought to be forfeited are indeed forfeitable." (Doc. 30, at 1).

The government deposed both claimants on April 14, 2018. Claimants invoked the Fifth Amendment in response to nearly all questions. Specifically, they refused to answer any questions regarding the circumstances surrounding their acquisition of the seized currency,

4

including the date, manner, and source of the currency. They did not answer any questions regarding their employment, their past criminal record, their relationships with each other, whether the currency was drug trafficking proceeds and/or facilitating property, the details of their intended air travel, or whether they were transporting the currencies on behalf of, or at the direction of, another person. In fact, claimants refused to answer whether they were the owners of the currency or even that they were in possession of the currency at the time it was seized. (*See* Depo. of Taiwan Wiggins; Depo. of Dalante Allison). In addition, the government's notices of deposition directed each claimant to produce all documents, records, and evidence that he intended to introduce at trial regarding his claim. Claimants again exercised their Fifth Amendment privilege in response to the request to provide the requested documentation, and their counsel confirmed that the claimants had no documents to offer.

Now pending before the Court is the Government's Motion for Summary Judgment on the Issue of Standing, which claimants oppose.

**SUMMARY JUDGMENT STANDARD**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**LAW AND ANALYSIS**

The only issue before the Court is whether claimants can carry their burden of establishing Article III standing at this stage of the proceedings. As an initial matter, the Court rejects claimants' argument that the government cannot challenge standing because the Sixth Circuit's decision on the issue is "law of the case." (Doc. 34, at 1). This is the only argument that claimants make in regard to standing in their opposition brief. The remainder of their brief is devoted to arguing that the searches at the airport were unlawful. The Sixth Circuit's decision on standing is not law of the case because the court held only that the claimants had Article III standing at the pleadings stage:

> For the sake of completeness, we note that we have construed the government's motion to strike as one made "on the pleadings" pursuant to Rule G(8)(c)(ii)(B)….We do not address the "preponderance of the evidence" burden of proof here, because that standard is inapplicable in a review of the pleadings in which the claimant need only allege, rather than prove, the facts establishing his standing to pursue the claim. *Cf. Lujan*, 504 U.S. at 561-62, 112 S.Ct. 2130; *$196,969 U.S. Currency*, 719 F.3d at 646.

*United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 352 n.3 (6th Cir. 2017). The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992). Because the Sixth Circuit's decision was limited to a determination of whether claimants met their burden of establishing Article III standing and the requirements of Rule G at the pleadings stage, it did not preclude the government from arguing that they failed to meet their burden on summary judgment.

In a civil forfeiture action, a person who wishes to intervene and assert an interest in the property must file two responsive pleadings: a verified claim and an answer. 18 U.S.C. § 983(a)(4)(A), (B); Supp. R. G(5). The verified claim must "identify the specific property claimed," "identify the claimant and state the claimant's interest in the property," and "be signed by the claimant under penalty of perjury." Supp. R. G(5)(a)(i). Supplemental Rule G(6)(a) allows the government to serve special interrogatories seeking information related to the claimant's identity and relationship to the defendant currency. The purpose of the rule is "to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing." Supp. R. G advisory committee's note (subdivision (6)).

At any time before trial, the government may move to strike the claimant's claim or answer "(A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing." Supp. R. G(8)(c). The motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Supp. R. G(8)(c)(ii)(B). If the case proceeds to trial, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1).

As in any case, standing is a threshold matter in an in rem civil forfeiture proceeding. *See, e.g., United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013). To meet Article III's case-or-controversy requirement, a claimant must establish the three elements of standing: an injury in fact, a causal connection between the injury and the conduct complained

of, and a likelihood that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S.at 560–61. The evidentiary requirements for establishing standing vary depending on the stage of the litigation. *Id.* at 561. To withstand a motion for summary judgment on lack of standing, a plaintiff cannot rely on mere allegations but rather must "'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (citation omitted).

Applying these principles to civil forfeiture actions, courts have used the "'colorable interest' test, which requires a claimant to present 'some evidence of ownership' beyond the mere assertion of an ownership interest in the property." *United States v. Phillips*, 883 F.3d 399, 403 (4th Cir. 2018) (noting that "[e]very court of appeals that has addressed the issue in the last twenty years has used the 'colorable interest' test") (citing cases from the First, Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits). Under the colorable interest test, "Article III's standing requirement is … satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *United States v. $515,060.42,* 152 F.3d 491, 497 (6th Cir.1998).

In its motion, the government argues that "[s]ince the burden of proof is squarely on the claimants to demonstrate their standing on this threshold issue, at this stage, neither claimant can continue to rely upon their naked assertion of ownership/possession contained in his claim and must provide an explanation and contextual information regarding each claimant's relationship to the defendant U.S. currency found in their respective luggage." (Doc. 33, at 5). Because Wiggins and Allison "have not offered anything beyond a bald assertion of ownership or

9

possessory interest in the property," the government argues that they cannot establish standing on summary judgment. (*Id.* at 7).

In cases such as this one where a claimant asserts an ownership interest—as opposed to a possessory interest—courts have not required a claimant to produce the type of explanatory evidence that the government asserts is required for standing. Rather, "[t]he required ownership interest can be demonstrated in a variety of ways, 'including showings of actual possession, control, title and financial stake." *U.S. v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1275 (10th Cir. 2008). Courts consistently hold that claimants who assert an ownership interest in property that was seized from their possession have Article III standing at the summary judgment stage to challenge the forfeiture. *See, e.g., id.* (holding that claimant had standing at summary judgment stage "because [his] assertion of ownership is assumed to be true on this record, and because the currency was indisputably seized from a vehicle that Austin was driving); *United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1112-3 (5th Cir. 1992) (holding that claimant who asserted an ownership interest had constitutional standing to challenge the forfeiture of currency seized from a car that he was driving); *see also U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640 (9th Cir. 2012) ("[An] assertion of ownership, combined with [the claimant's] possession of the currency at the time it was seized, would be enough to establish [his] standing for purposes of a motion for summary judgment.").

Here, assuming the Court were to consider all of the evidence in the record, it would include the claimants' unequivocal claim of ownership in their verified claim and the government's own verified complaint stating that the currency was found in their possession.[1]

---

[1] The Court notes that claimants have not cited to any evidence in the record to establish their standing, choosing instead to rest on their assertion that the Sixth

*See id.* at 639-40 (holding that verified claim constitutes evidence for purposes of opposing the government's motion for summary judgment). This would be sufficient to establish the claimants' standing at the summary judgment stage. The government, however, argues that the Court should not consider the claimants' assertion of ownership in their verified claim because they chose to exercise their Fifth Amendment privilege rather than respond to the government's special interrogatories and discovery requests, which were directed at determining the legitimacy of the claimants' naked assertions of ownership. Without evidence of a claim of ownership, the claimants cannot establish standing. Claimants do not respond to the government's argument.

Circuit courts agree that "a district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause." *$148,840.00 in U.S. Currency,* 521 F.3d at 1277 (citing *United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 84–85 (2d Cir.1995) ("If it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial procedures or impose sanctions."); *United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir.1990) (holding in a civil forfeiture action that "a witness' direct testimony can be stricken if she invokes the fifth amendment on cross-examination to shield that testimony from scrutiny")); *see also U.S. v. $110,873.00 in U.S. Currency*, 159 Fed. Appx. 649, 653 (6th Cir. 2005) ("[Claimant] had an opportunity to present his side of the case, and he simply chose to remain silent—a perfectly constitutional option but one that he may not leverage into a basis for avoiding the requirements of Rule 56 of the Federal Rules of Civil Procedure."); *United States v. Certain Real Property*

---

Circuit's decision on standing is law of the case.

*566 Hendrickson Boulevard,* 986 F.2d 990, 996 (6th Cir.1993) ("Claimant cannot avoid completely his Rule 56 burden by merely asserting a Fifth Amendment privilege.").

In *$133,420.00 in U.S. Currency*, for example, the claimant invoked his Fifth Amendment privilege to avoid answering an interrogatory question as to the "date(s), time, place and manner in which the defendant currency [ ] was obtained" and the "circumstances of each transaction by which [he] acquired or obtained any interest in the defendant currency." 672 F.3d at 636. He did, however, provide a limited response stating that he was the "owner and possessor of said property, with a right to exercise dominion and control over said property." *Id.* at 637. Because he had frustrated the government's attempts to test the veracity of his claim of ownership, the district court struck this response, which left him with no evidence that he had made a claim of ownership to the property. *Id.* Without a claim of ownership, he could not establish standing, so the district court granted summary judgment in favor of the government.[2] The Ninth Circuit affirmed, agreeing that the claimant had "impaired the truth-seeking function of the judicial process" by invoking the Fifth Amendment in response to the government's interrogatories. *Id.* at 642. As such, the district court did not abuse its discretion in striking the claimant's response.

The Tenth Circuit has also noted that a district court has the discretion to strike a claim of ownership where a claimant chooses to invoke the Fifth Amendment privilege rather than respond to the government's discovery regarding how he came into such ownership. In *$148,840.00 in U.S. Currency,* the claimant testified in his deposition that the currency, which

---

[2] His verified claim asserted that he had an "ownership and/or possessory" interest in the seized currency, which was insufficient to establish standing because it did not make clear whether he was asserting a possessory interest or an ownership interest. *Id.* at 640.

had been seized from a vehicle that he was driving, was his. He invoked the Fifth Amendment, however, when the government attempted to discover the nature of his ownership. The government moved for summary judgment, arguing that the claimant failed to establish standing. It did not move to strike the claimant's deposition testimony regarding his claim of ownership, so the district court considered the testimony in ruling on the motion. Because the claimant had made a claim of ownership and the money was seized from a vehicle that he was driving, the court held that he had standing. The Tenth Circuit affirmed because the evidence remained in the record, but explained that "[t]his would, of course, be a different case if the district court had exercised its discretion to strike Austin's claim of ownership to the currency in light of his repeated invocation of the Fifth Amendment privilege." 521 F.3d at 1277.

Here, the Court agrees with the government that claimants should not be permitted to use the Fifth Amendment as a way of frustrating the government's attempt to determine the nature of their asserted ownership interest. Indeed, in rejecting the government's argument that a claimant should be required to spell out his interest in the seized property at the outset of a case, the Sixth Circuit specifically noted that the government has at its disposal special interrogatories that are for the very purpose of discovering the veracity of a claim of ownership: "We have no doubt that the lawyers of the United States Attorney's Offices within the Sixth Circuit have the capacity to draft useful interrogatories that will either confirm a claimant's interest in the *res* or expose the futility of the claim." *$31,000 in U.S. Currency*, 872 F.3d at 354. By repeatedly invoking the Fifth Amendment, however, the claimants have obstructed the discovery process and made it impossible for the government to use special interrogatories or any other type of discovery to test the truthfulness of their naked assertions of ownership. *See also United States v. Parcels of Land*,

13

903 F.2d 36, 43 (1st Cir. 1990) ("[T]he power to strike is grounded in the principle that once a witness testifies, she may not invoke the fifth amendment privilege so as to shield that testimony from scrutiny. To allow her to do so would constitute a positive invitation to mutilate the truth.") (internal quotations and citations omitted).

Because claimants' claim of privilege "raises the core concern" that their testimony could furnish them with what may be false evidence and prejudice the government by depriving it of any means of detecting the falsity, the Court will strike their assertions of ownership in their verified claims. *$133,420.00 in U.S. Currency*, 672 F.3d at 642. That leaves the record devoid of any claim of ownership to the seized currency.[3] Without a claim of ownership, the claimants are unable to meet their burden of establishing standing at the summary judgment stage. Thus, the government is entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on the Issue of Standing (Doc. 33) is GRANTED.

IT IS SO ORDERED.

           /s/ Patricia A. Gaughan
           PATRICIA A. GAUGHAN
           United States District Court
           Chief Judge

Dated: 5/23/18

---

[3] In their answers, both claimants denied that they made an assertion of ownership of the currency when it was found by the DEA agents at the airport, and, in their depositions, both refused to testify that they were the owners of the currency.